1

2

3

4

5          UNITED STATES DISTRICT COURT

6          NORTHERN DISTRICT OF CALIFORNIA

7

8    DAVID EARL POPE,                           No. C 06-1829 SI (pr)

9              Petitioner,                       **ORDER DENYING HABEAS
                                                 PETITION**
10        v.

11   ROSEANNE CAMPBELL, Warden,

12             Respondent.
     _____/

13

14                            **INTRODUCTION**

15          This matter is now before the court for consideration of the merits of David Earl Pope's

16   pro se petition for a writ of habeas corpus concerning his conviction and sentence in the Lake

17   County Superior Court.  For the reasons discussed below, the petition will be denied.

18

19                            **BACKGROUND**

20   A.     The Crimes

21          The relevant facts underlying the charged offenses were described by the California Court

22   of Appeal:

23
            In brief, appellant's daughter testified he raped her and penetrated her with his
24          finger, while she was working at his pear ranch in 1994. Appellant acted under the
            pretext of conducting "Touch for Health" sessions with his daughter, in which he
25          would take off her clothing and massage her. Appellant increasingly began to turn
            the massage sessions into sexual encounters, in which he massaged his daughter
26          sexually and penetrated her with his finger, while she struggled to resist. He also
            told his daughter that she had a "nice pussy" and that he was "going to fuck [her]."
27          Appellant then put on a condom and raped his [then fifteen-year-old] daughter.

28          Afterwards, the victim telephoned her aunt and asked to be picked up. She left the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2

pear ranch, never to return. The victim was embarrassed and did not initially want to report the rape, because she did not want anyone else to know. A few weeks after the incident, the victim told her aunt and her boyfriend. . . .

3
4
5
6

About a year later, in August of 1995, the victim reported the rape to Lake County Deputy Sheriff Jim Samples. Samples in turn reported the matter to the local child protective services agency, which met with the victim and her grandmother on August 10, 1995. Samples did not feel he could press the victim to come forward at that time with charges, unless she was ready to do so. Samples had made brief investigative notes, but these notes were lost or misplaced.

7
8
9
10

In the summer of 1999, the victim again approached law enforcement authorities regarding the rape. She had learned that appellant had sired another child, a daughter, and the victim did not want this child to also be abused by appellant. This time, the victim spoke with Deputy Mike Curran. She showed Curran her work ledger diary entries, and explained the significance of the notations "HRM" and "HM." At trial, the victim explained that the letters "HRM" signified "He Raped Me" and "HM" meant "Help Me."

11
12
13

Curran requested the victim to call appellant on a pretext, and she did so; the call was taped and a transcript was prepared. The victim also set up a meeting at a park at which she wore a wire to record the conversation surreptitiously. At the meeting however appellant brought an erasable writing tablet, and he wrote on it that the victim should write things down and not talk out loud.

14
15
16
17
18

Appellant was charged in the year 2000 with three crimes: rape, oral copulation, and penetration with a foreign object. The issue of appellant's competency was first tried to a jury. He was found to be competent. Although appellant had been represented by counsel at the preliminary hearing and competency trial, he filed repeated Marsden . . . motions, and chose to represent himself at the trial in 2001. His requests for advisory counsel were also denied. The trial court denied appellant's motion to dismiss based upon delay in filing charges, ruling that he had suffered no prejudice, and the delay was justified by the initial reluctance of the victim to come forward and seek the prosecution of her father.

19
20
21
22

Appellant testified in his own defense under questioning by his brother, an attorney. Appellant confirmed that he had given the victim instruction in the Touch for Health massage system. However, he denied there was any sexual content, adding that he and his daughter were always clothed except for the part of the body being massaged. Appellant acknowledged that sometimes the victim was wearing only underpants and a bra.

23
24
25

According to appellant, on July 26, 1994, the victim came to work distressed and "out of balance" under the Touch for Health system, so he asked her to let him reset the direction of her "energy pattern" by "running your belly button and your collar bone," but she refused. Later that day the victim did not accomplish much work at the ranch. Appellant was in the midst of trial preparation for a civil case, so he dismissed her. His daughter left the ranch.

26
27

Appellant denied raping or molesting his daughter. He recalled looking through her work ledgers in August and September 1994 and had not seen the notations "HRM" and "HM" which now appear there.

28

Appellant had severe financial problems in the following years, and the Internal Revenue Service brought an enforcement action against him. When the victim called appellant to set up a meeting at the park, he noticed her "tone quality" was "one point one" which indicated to him feelings of hostility, lying, intrigue, and that she was making stuff up. He brought the erasable writing pads to their meeting, thinking she might be wired.

At their meeting, appellant conceded he had not responded with a flat out denial of the molestation allegations, but he did not actually admit them either. Instead, when she accused him of doing wrong by touching her and having sex with her, appellant responded that "there are not right or wrong things . . . in certain areas" and he made other similar oblique comments, promising to answer his daughter's questions at some future time. When she asked him at the park if he had had intercourse with her simply for his own pleasure, he responded it was not for his own "pleasure" and was more like when he would "eat dinner."

Cal. Ct. App. Opinion, pp. 1-4 (footnotes omitted).

B.    <u>Case History</u>

In April 2000, Pope was charged with oral copulation, penetration with a foreign object, and forcible rape, <u>see</u> Cal. Penal Code §§ 288a(c)(2), 289(a)(1), 261(a)(2). Expressing "concern" about Pope's competency to stand trial, 5/9/00 RT 4, the trial court suspended the criminal proceedings. Eventually, a trial was held to determine his competency, and a jury found Pope mentally competent in August 2000. When the criminal proceedings resumed, Pope successfully moved for self-representation under <u>Faretta v. California</u>, 422 U.S. 806 (1975). On April 13, 2001, the jury acquitted Pope of the oral copulation charge and convicted him of the other two charges. Pope was sentenced to twelve years in state prison.

Pope appealed his conviction to the California Court of Appeal. Unsatisfied with the opening brief filed by appellate counsel containing only three claims, Pope filed a supplemental habeas petition raising five additional claims, which he asked the court to consolidate with the direct appeal. The Court of Appeal denied Pope's request for consolidation, but, without issuing a formal order to show cause, allowed the Attorney General to file a memorandum of points and authorities addressing whether a show-cause order should issue. The Attorney General filed a short opposition brief, and Pope filed a traverse. On August 18, 2003, the Court of Appeal affirmed the conviction in an unpublished opinion addressing only the three claims raised in

appellate counsel's opening brief.  The court summarily denied Pope's habeas petition on the same day.  Subsequently, the California Supreme Court summarily denied Pope's petition for review and habeas petition.[1]

In 2005 and 2006, Pope filed two additional habeas petitions in the Lake County Superior Court on various sentencing-related grounds.  Both petitions were denied.

Pope filed this habeas action on March 9, 2006.  Pope raises seven[2] grounds for relief: (1) the state court of appeal violated his right to due process by refusing to decide on the merits all issues included in Pope's supplemental habeas petition; (2) Pope was improperly denied his right to self-representation under the Sixth and Fourteenth Amendments at the preliminary hearing stages; (3) a 1995 agreement with law enforcement agencies barred further prosecution, and the prosecutor's refusal to provide records relating to the agreement violated Pope's rights under Brady v. Maryland, 373 U.S. 83 (1963); (4) the trial court's refusal to appoint counsel who would investigate the case and prepare for trial deprived Pope of his right to effective assistance of counsel, resulted in a denial of his right to a speedy trial, and forced him into a tainted motion for self-representation in violation of the Sixth and Fourteenth Amendments; (5) the trial court's failure to give requested jury instructions and to sua sponte instruct on lesser offenses violated his due process rights; (6) Pope was denied effective assistance of appellate counsel; and (7) the sentence imposed violated due process because it was based on facts not submitted to a jury and found true beyond a reasonable doubt as mandated by Blakely v. Washington, 542 U.S. 296 (2004).  The court issued an order to show cause why the petition should not be granted. Respondent filed an answer, and Pope filed a traverse.

---

[1]Because the California Court of Appeal and Supreme Court both issued summary denials, many of the issues raised in this habeas action have not been addressed in any state court opinion.

[2]This does not include Pope's original Claim 5, which the court has already dismissed. Claim 5 was based on the trial court's refusal to appoint counsel to assist Pope in an advisory capacity, which Pope claimed violated his right to due process. Pet. at 7(9).  The court dismissed the claim on the ground that a criminal defendant has no federal constitutional right to advisory or standby counsel; a criminal defendant has a right to be represented either by himself or by counsel but not both.  Order to Show Cause at 2-3.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1

**JURISDICTION AND VENUE**

2

This court has subject matter jurisdiction over this habeas action for relief under 28

3

U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged

4

conviction occurred in Lake County, California, within this judicial district.  28 U.S.C. §§ 84,

5

2241(d).

6

7

**EXHAUSTION**

8

9

Prisoners in state custody who wish to challenge collaterally in federal habeas

10

proceedings either the fact or length of their confinement are required first to exhaust state

11

judicial remedies, either on direct appeal or through collateral proceedings, by presenting the

12

highest state court available with a fair opportunity to rule on the merits of each and every claim

13

they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  State judicial remedies have

14

been exhausted for the claims presented in the petition.

15

16

**STANDARD OF REVIEW**

17

18

This court may entertain a petition for writ of habeas corpus "in behalf of a person in

19

custody pursuant to the judgment of a State court only on the ground that he is in custody in

20

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The

21

petition may not be granted with respect to any claim that was adjudicated on the merits in state

22

court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

23

contrary to, or involved an unreasonable application of, clearly established Federal law, as

24

determined by the Supreme Court of the United States; or (2) resulted in a decision that was

25

based on an unreasonable determination of the facts in light of the evidence presented in the

26

State court proceeding."  28 U.S.C. § 2254(d).

27

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

28

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or

if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

A.      Claim Concerning Right to Appellate Court Decision

Pope contends that the California Court of Appeal's failure to address any of the issues presented in his state habeas petition violated his due process rights under the Fourteenth Amendment.  By not addressing the additional facts, issues, or transcript references that were included in the habeas petition, the Court of Appeal allegedly deprived Pope of his right to have all issues decided on the merits in his first appeal of right.

This claim has no factual or legal merit.  Pope has confused the absence of a discussion with the absence of a decision.  A summary denial (as occurred here) is in fact a decision.  The state court of appeal may not have discussed the reasoning in support of its decision, but Pope had no constitutional right to have a decision that discussed the court's reasoning.  Federal courts sitting in habeas review will presume that a state court's summary denial of a habeas petition is a decision on the merits of the federal claims absent a clear statement or citation to the contrary. Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992);  Harris v. Superior Court, 500 F.2d 1124, 1128-29 (9th Cir. 1974).  In discerning the basis of an unexplained state court order,

United States District Court
For the Northern District of California

federal courts consider the nature of the disposition (i.e., whether it was a denial or dismissal) and the surrounding circumstances (e.g., whether the State argued the merits of the petition in its opposition papers). See Hunter, 982 F.2d at 347. Here, the Court of Appeal denied rather than dismissed the habeas petition in an order separate from that rejecting the direct appeal, and did so after allowing informal briefing on the question of whether an order to show cause should be issued. Both of these factors support the presumption that the Court of Appeal's denial of Pope's petition amounted to a decision on the merits even though it did not expressly discuss the claims contained in his petition. See Hunter, 982 F.2d at 347. Pope's contention that the state court failed to address the merits of the issues raised in his habeas petition is unfounded.

Further, because this claim concerns the state appellate court's handling of the habeas petition Pope filed (rather than the direct appeal), any error could not support federal habeas relief. An error in the state habeas petition process is not addressable through federal habeas corpus proceedings. See Ortiz v. Stewart, 149 F.3d 923, 939 (9th Cir. 1998); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997); Villafuerte v. Stewart, 111 F.3d 616, 632 n.7 (9th Cir. 1997); Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989).

B.    Self-Representation Claim

Pope contends that he was improperly denied his Sixth and Fourteenth Amendment right to self-representation – a right which he claims encompasses access to an adequate law library – despite the fact that he unequivocally asked to represent himself at various preliminary stages of the prosecution and never agreed to have counsel represent him. Pet. at 7(2). The trial court's denial of self-representation allegedly deprived him of a prompt investigation, the filing of a formal discovery motion, the filing of a demurrer based on an alleged prior agreement with law enforcement, and his speedy trial rights. Id. Ultimately, Pope claims that being denied self-representation along with library access and support services during the preliminary hearing stages forced him to accept ineffective counsel as his only way to access the court; that choice, in turn, forced him to file a tainted motion for self-representation, which resulted in the loss of

7

1   his right to the assistance of counsel at trial.  Id.[3]

2       As a preliminary matter, the right to self-representation under <u>Faretta v. California</u>, 422

3   U.S. 806 (1975), does not clearly establish a right to law library access or any other specific

4   legal aid that must be afforded to a criminal defendant who has chosen to represent himself.

5   <u>Kane v. Garcia Espitia</u>, 546 U.S. 9, 10 (2005).  Pope's contention that he was forced to choose

6   between self-representation without library access and the appointment of ineffective counsel,

7   then, does not state a constitutional violation under <u>Faretta</u>.  Similarly, the difficulties he

8   describes in complying with the trial court's requirement that his disqualification motion be in

9   writing do not support Pope's claim that his right to self-representation was violated.  To the

10  extent Pope's library-access argument is based on more general due process grounds, the

11  separate and distinct constitutional right of access to the courts, <u>see</u> <u>Lewis v. Casey</u>, 518 U.S.

12  343 (1996), also does not provide an avenue for relief for a <u>pro se</u> criminal defendant denied

13  supplies and law library access.  Various circuits, including the Ninth Circuit, have concluded

14  that making legal assistance available at government expense provides a constitutionally

15  permissible means of access to the court.  <u>See</u> <u>United States v. Wilson</u>, 690 F.2d 1267, 1271 (9th

16  Cir. 1982).  "The offer of court-appointed counsel to represent [defendant]," as was done in this

17  case, "satisfied the Fifth Amendment obligation to provide meaningful access to the courts." <u>Id.</u>

18  at 1272.

19

20      Pope's claim also fails because he never in fact unequivocally asked for self-

21  representation at the preliminary stages of the prosecution.  A criminal defendant does have a

22  Sixth Amendment right to self-representation under <u>Faretta</u>; however, the defendant's decision

23  to represent himself and waive the right to counsel must be unequivocal, knowing and

24  intelligent, timely, and not for purposes of securing delay.  <u>Faretta</u>, 422 U.S. at 835; <u>United</u>

25  <u>States v. Arlt</u>, 41 F.3d 516, 519 (9th Cir. 1994); <u>Adams v. Carroll</u>, 875 F.2d 1441, 1444 & n.3

26

27  ───────────────

28      [3]This claim concerns Pope's efforts to represent himself early in the case.  He did
    represent himself at trial in 2001.

United States District Court
For the Northern District of California

(9th Cir. 1989).[4]  While Pope states that the reporter's transcripts of the arraignment proceedings show that he "never waivered [sic] or varied in his request or position [for self-representation]," Pet. at 7(2), the transcripts reflect just the opposite.  On the second day[5] of the arraignment proceedings, after Pope expressed dissatisfaction with the availability of legal research and writing materials, the trial judge asked, "Are you requesting that you be allowed to represent yourself in this case?" and Pope replied, "For the time being."  CT 348.  But when the judge gave Pope a petition to proceed in pro per, Pope refused to fill it out, saying, "I will not sign a form waiving my rights."  CT 348-49.  Later, the court told Pope that it was not advisable to represent himself in a criminal case, to which Pope responded, "I'm not trying to represent myself, I'm trying to get access to a law library and books and a typewriter, so I can make at least the minimum motion, or access to a telephone, which I have been denied until two days ago, to conduct my affairs."  CT 350.  The judge continued to give Pope the standard cautionary advisements about self-representation, apparently in an effort to assess whether Pope's waiver of counsel would be knowing and voluntary should he so choose.  CT 350-51.  Pope then responded, "I'm not giving up my right to counsel, your Honor; that is why I wouldn't sign the form. . . . I need you to appoint me a lawyer, but I need you to appoint me one who is suited to this particular kind of case."  CT 351.  The matter ended when the judge appointed a public defender to represent Pope "at this point," acknowledging Pope's repeated statements that he was not agreeing to outright representation but only to "talking" to an attorney.  CT 352, 354.

Far from an unequivocal request for self-representation, the above exchange shows Pope

---

[4]Last month, the Supreme Court refined Faretta by holding that the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial but who suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves. Indiana v. Edwards, No. 07-208, slip op. at 12 (U.S. June 19, 2008). Because Pope was found competent to stand trial and the trial court ultimately granted his Faretta motion, Edwards bears no relevance to Pope's self-representation claims.

[5]The court repeatedly continued the arraignment to allow Pope to make up his mind about representation issues.  Arraignment proceedings were held on February 14, 18, and 25, 2000, as well as on March 3, 10, and 17, 2000 before the court entered a plea on Pope's behalf. Throughout those proceedings, Pope repeatedly refused to enter a plea because of his dismay about the attorneys who would be appointed for him and the alleged inadequacy of the services and supplies that would be made available to him if he represented himself.  See CT 338-385.

unequivocally asking *for* counsel, or at least, expressing ambivalence about whether he would want counsel in the future.  Pope's refusal to fill out the request form indicates that he was unwilling to complete the steps necessary to achieve self-representation, even when the judge was prepared to conduct a <u>Faretta</u> colloquy.  As discussed above, Pope's rationale that he could not attempt to represent himself without being given library access is not supported by the <u>Faretta</u> self-representation guarantee or by general due process principles.  His contingently worded allusions to self-representation simply cannot be deemed unequivocal for the purposes of a <u>Faretta</u> motion.  Without having established that he unequivocally requested self-representation at the arraignment and preliminary hearing stages, Pope cannot establish that he was improperly denied that right.

Moreover, Pope's evident ambivalence about self-representation lasted well beyond the preliminary proceedings, contrary to his assertions that he "asked for self-representation prior to having counsel" and "never agreed to have counsel represent him."  Pet. at 7(2).  At Pope's second <u>Marsden</u> hearing with his second-appointed counsel Douglas Rhoades[6] – nearly two months after the arraignment proceedings – Pope stated, "I don't want to be in pro per.  I'm not stupid enough to sit here and say that you would give me the same credibility you'd give an attorney.  But at the same time, I'm not willing to turn my case over to an attorney."  4/11/00 RT 26.  On the second day of the hearing, the court correctly explained that there is no right to advisory counsel, then asked Pope if he still wanted to be represented by counsel during the criminal proceedings.  4/12/00 RT 21.  Pope answered, "Yes. . . . Because that is my only second alternative."  4/12/00 RT 22.  It was not until the third <u>Marsden</u> hearing with Rhoades a month later that Pope made a clear attempt to obtain self-representation based on Rhoades' perceived failings and the court's unwillingness to replace him: "I will represent myself rather than have this man [Rhoades] represent me."  5/8/00 RT 5.  At that point, the court decided to appoint an

_____

[6]Cheryl Turner was the public defender initially appointed to represent Pope during the preliminary stages.  The judge replaced her with Rhoades at the conclusion of a <u>Marsden</u> hearing that she initiated due to her inability "to do what [Pope] apparently is requiring of an attorney to do."  CT 362; <u>see</u> 4/11/00 RT 7-8.

United States District Court
For the Northern District of California

expert to examine Pope's competency to stand trial.   5/9/00 RT 4.   During subsequent competency-related proceedings, the judge legitimately denied Pope's then-emphatic demands for self-representation because he thought it was not "appropriate for the court to do so while there are competency proceedings pending."  7/5/00 RT 6.  After Pope was found competent, and following extended questioning by the judge to ensure Pope's waiver of counsel was knowing and voluntary, the judge granted Pope's <u>Faretta</u> motion.   9/8/00 RT 53-72.[7]  This chronology reflects reasonable efforts by the trial court to clarify Pope's initially equivocating position on self-representation, to hear and address Pope's claims of ineffective assistance of counsel over multiple <u>Marsden</u> hearings, to fully evaluate Pope's competency before allowing him to seek self-representation, and finally to accommodate Pope's then-unequivocal request for self-representation once the issue of competency was resolved.  Accordingly, Pope's claim that he was improperly denied his right to self-representation is denied.

C.     <u>"Brady" Claim</u>

         Pope argues that law enforcement made an agreement in 1995 not to prosecute that should have been a legal bar to the criminal proceedings, and the prosecution's failure to produce records related to that agreement violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).   The particular documents Pope contends were not timely produced were 1994-1995 records from Child Protective Services ("CPS") including case work, case study notes and interviews with the alleged victim or any family members.   At the hearing on Pope's discovery motion, the district attorney stated, "As far as I know there are no documents, police reports, or anything Mr. Pope has not been provided."  10/3/00 RT 16.  Subsequently at trial, Pope renewed his requests for the documents, and the program manager of CPS submitted a declaration that there were no records in the department's possession related to the victim or Pope's second daughter. CT 569. The next day, the same representative submitted another declaration stating that the records had

---

[7] Pope moved for self-representation following a fifth <u>Marsden</u> hearing where the judge again refused to replace Rhoades.  <u>See</u> 9/8/00 RT 5, 46-47.

just been discovered in a file for Pope's third daughter. CT 577-78. The records included: (1) an emergency response referral form dated August 4, 1995, and (2) a two-page narrative indicating a last contact on August 11, 1995. CT 578. Pope argues that these documents proved the State violated its prior non-prosecution agreement and that failure to provide the evidence until after the jury was sworn contravened <u>Brady</u>'s discovery requirements. Further, he argues that the State's failure to adhere to the non-prosecution agreement was a double-jeopardy violation requiring dismissal of the criminal conviction.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373 U.S. at 87. The duty to disclose such evidence applies even when there has been no request by the accused, <u>United States v. Agurs</u>, 427 U.S. 97, 107 (1976), and the duty encompasses impeachment evidence as well as exculpatory evidence, <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 682. "There are three components of a true <u>Brady</u> violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).

Pope has not made any credible showing that a non-prosecution agreement from 1995 ever existed.[8] As to the materials that did exist – i.e., two reports from 1995 – Pope has failed

---

[8]The closest thing in the record before this court to a non-prosecution agreement is a 1995 CPS form that states: "After investigations SW recommends closure." CT 934. The narrative attached to the form states that the social worker recommends the "ER" – possibly a reference to the emergency referral – be "closed as the minor is safe and removed from the perpetrator, David Earl Pope." CT 936; <u>see also</u> CT 935 (noting that the "child has no further contact with father"). The form also stated that the allegations were of "child molest and alleged unlawful intercourse – possibly rape – by father of the above minor." CT 934. No reasonable person would construe this document to be an agreement that Pope could not be prosecuted. In addition

to show at least two necessary elements of a <u>Brady</u> violation.  First, there is no evidence that the material was exculpatory or of impeachment value.  After reviewing the contents of the CPS report, the trial court immediately denied Pope's motion to dismiss for failure to disclose, finding that "there's no exculpatory material here.  At most, it's a matter that is probably confirmatory of everything that's been said to date."  3/28/01 RT 749.  When the parties continued to address the question of admissibility the following day, the court determined that the report was in fact damaging to the defense position: the fact of its creation in early 1995 contradicted Pope's attempts to challenge the professionalism and diligence of the law enforcement officers who initially interviewed the victim.  4/4/01 RT 1303-04.  The judge concluded that it would "rehabilitate Officer Samples' credibility and believability" and refute Pope's theory that much of the prosecution's evidence was generated years after the event.  4/4/01 RT 1304-05.  In addition, Pope's objections to admission of the evidence on hearsay and timeliness grounds, 4/3/01 RT 1091-93, undermine his assertion that the CPS reports proved the state violated a non-prosecution agreement.  If the reports supported his case, Pope would have attempted to have them admitted, not suppressed.  Second, Pope has failed to show that the delayed disclosure of the evidence was prejudicial in any way to his defense.  The <u>Brady</u> claim fails.

Even if Pope was able to show a non-prosecution agreement existed, his double-jeopardy argument has no merit.  Jeopardy attaches when the jury is empaneled and sworn, <u>see</u> <u>Crist v. Bretz</u>, 437 U.S. 28, 29 (1978), or upon the court's acceptance of a plea agreement, <u>see</u> <u>United States v. Smith</u>, 912 F.2d 322, 324 (9th Cir. 1990).  Jeopardy did not attach, as Pope claims, "when the CPS report was taken."  Pet. at 7(5).  Lastly, because there is no credible evidence that a non-prosecution agreement existed, his <u>Santobello</u> claim fails: there is no agreement that can be enforced.  <u>See</u> <u>Santobello v. New York</u>, 404 U.S. 257 (1971).

---

to the text not supporting that interpretation, neither Pope nor the district attorney signed the document.

D.    <u>Ineffective Assistance of Counsel Claim</u>

Pope claims he received ineffective assistance of counsel during the time counsel represented him.  He alleges that, as a result of counsel's failure to investigate the case and otherwise prepare for trial, Pope was compelled to request self-representation, and the trial court's decision to initiate competency proceedings prior to granting that request violated his speedy trial right.  Pet. at 7(8).  Finally, Pope claims his <u>Faretta</u> motion following the competency proceedings was "tainted" by the ineffectiveness of counsel and deprived him of his right to counsel at trial.  <u>Id.</u>

With respect to the ineffectiveness of appointed counsel, Douglas Rhoades, Pope first faults the general systemic problems with the Lake County public defender system.  <u>Id.</u> at 7(5).  The deficiencies specific to Rhoades, which Pope voiced and the court rejected over multiple <u>Marsden</u> hearings, include: a failure to file a discovery motion or solicit CPS to obtain original documents, failure to file a demurrer and motion to dismiss for delay in prosecution, failure to file a motion to suppress, lack of a defense strategy, insufficient time spent on investigation and meetings with Pope, and failure to obtain transcripts.  <u>Id.</u> at 7(6)-7(7).

The Sixth Amendment right to counsel guarantees not only assistance, but effective assistance, of counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  <u>Id.</u>  In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  <u>Id.</u> at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance. <u>Id.</u> at 689.   It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the <u>Strickland</u> test if the petitioner cannot even establish deficient performance under the first prong.  <u>See</u> <u>Siripongs v. Calderon</u>, 133 F.3d 732, 737 (9th Cir. 1998).

Pope has failed to show that defense counsel Rhoades was deficient under the <u>Strickland</u> test.  At the first <u>Marsden</u> hearing, Pope's complaints about Rhoades' handling of the criminal case focused on his failure to file various motions based on alleged felonious conduct by the district attorney's office and sheriff's department.[9]   Rhoades responded to Pope's numerous allegations and explained that he had made considered decisions.  He believed the motions were meritless and "beyond the pale of what is generally appropriate."  3/31/00 RT 25.  Pope also complained about Rhoades' failure to serve a subpoena on the victim, his failure to conduct discovery and review evidence, his unwillingness to ask the court for a live demonstration of "touch-for-health" in the courtroom, and his general personality as a "physically uptight male" with "no understanding of touch as anything except sex."  3/31/00 RT 11-16.  In response to these complaints, Rhoades said, "I'm not going to waste the court's time by doing something that I think is absolutely meritless."  3/31/00 RT 24-25.  Rhoades also commented that he "seriously questioned" Pope's ability to understand the consequences of the proceedings and to conduct his own defense, to the point where he considered asking the court to authorize an evaluation of Pope's competence.  3/31/00 RT 25.

Pope raised mainly the same grievances at the second <u>Marsden</u> hearing.  <u>See</u> 4/11/00 RT 5.  Again, Rhoades' general response was that, in his professional opinion, the tasks Pope wanted him to pursue lacked merit:

---

[9]These motions included a motion to suppress evidence at the preliminary hearing because of law enforcement's alleged falsification and destruction of evidence, a motion for dismissal based on selective prosecution of older males by the Lake County Sheriff and District Attorney, and a motion for dismissal based on the district attorney's "practice and policy" of fabricating additional counts in criminal complaints.  3/31/00 RT 4-8.  Pope has not shown that there was a reasonable basis in fact and law to make any of these motions.  Nor has he shown that, once he represented himself, he made any such motion with a successful outcome.

United States District Court
For the Northern District of California

> [Pope] is very adament [sic] about certain things that he wants done, some of which I think are either meritless or of little merit and my position, as I told him was that one of my obligations is to advise him, do what I believe is appropriate when it coincides exactly with his wishes, and not to bring frivalous [sic] matters before the Court simply for a waste of time or an obfustication [sic] of some other issue.

4/12/00 RT 8.  Notably, many of Pope's complaints during these earlier <u>Marsden</u> hearings involved Rhoades' failure to assist him with tangential matters unrelated to the criminal proceedings.  For example, he wanted Rhoades to obtain transcripts from child custody proceedings and to file a civil complaint under 42 U.S.C. § 1983 – with Rhoades himself as a named defendant – regarding the deficiencies of the public defender system.  3/31/00 RT 13-14; 4/11/00 RT 12, 27-29.  The court ruled these two matters were beyond the scope of Rhoades' responsibilities as a public defender.  4/12/00 RT 19-20.  The trial court concluded that the representation was adequate under constitutional standards and that the differences were mainly "in the management of the case" rather than due to any real deficiency on Rhoades' part.  4/12/00 RT 27.

At the third <u>Marsden</u> hearing, Pope again raised the same complaints about Rhoades' inadequate efforts to conduct an investigation for original documents, to prepare certain motions, and to help him file the § 1983 action in federal court.  5/2/00 RT 10, 14-16.  He also stated that he and Rhoades had "irreconcilable differences" about how the case should be conducted, 5/2/00 RT 7, and that generally Rhoades and other public defenders were overextended and had insufficient time to spend with their clients, 5/3/00 RT 12-13.  In response, Rhoades explained that he "didn't see a need" for a formal discovery motion, because after informal discovery had taken place the district attorney told him everything had been produced.  5/3/00 RT 27.  Rhoades also explained that his attempts to hire investigators were stalled by the investigators' need to evaluate a potential conflict of interest with Pope, but that another investigator was "standing by" while the conflict was being sorted out.  5/3/00 RT 28.  With respect to the other motions, Rhoades declined to file them because he thought they were meritless.  5/3/00 RT 24, 29-30.  Rhoades further stated that he had adequate time to represent Pope, but Pope is a "high-

maintenance individual" who "demands a great deal of time, far in excess of what, in my professional opinion, his case merits."  5/3/00 RT 33.  After hearing these clearly conflicting perspectives, the court again concluded that Rhoades' representation had been adequate:

> [Q]uite frankly, the problem I'm having here is that the matters that Mr. Pope complains about are matters that . . . have been considered and rejected by his attorney of record; [b]ut also they are the types of matters that no matter who his lawyer was, assuming his lawyer was a competent lawyer, would be rejected as well. . . . The lawyer is duty-bound to represent the client to the best of professional abilities, but that does not mean that the lawyer is required to file frivolous motions, to bring motions otherwise that are lacking in merit, or they are just not appropriate, just because the client demands that that be done. . . . And I say that because if viewed through Mr. Pope's eyes I suspect any attorney that would represent him, as I indicated, would be faced with just the same situation that Mr. Rhoades is faced with, and the same disagreements would arise, and the same claim of inadequacy, because the lawyer would not do those things which Mr. Pope has indicated should be done and he's expressed here should be done.

5/3/00 RT 38-40.

The transcripts of the <u>Marsden</u> hearings reflect disagreement between Pope and Rhoades over their tactical approaches to the case, not professional deficiency on Rhoades' part.  The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel.  <u>See</u> <u>Morris v. Slappy</u>, 461 U.S. 1, 14 (1983).  The essential aim is "to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988).  "[N]ot every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights."  <u>Schell v. Witek</u>, 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc).  The trial court's continued decision not to appoint a replacement attorney indicates that it found Rhoades' merit assessments and general handling of the case to be professionally adequate.  The court's intuition that any attorney representing Pope would face the same disagreements was prescient: Pope requested a <u>Marsden</u> hearing for his appointed competency-trial attorney in August, and yet another one for Rhoades when the criminal proceedings resumed in September.  In neither case did the court find the representation inadequate.  <u>See</u> 8/22/00 RT 22; 9/8/00 RT 46.  As the California Court of Appeal noted, Pope had an "extensive record of filing repeated <u>Marsden</u> motions," which reflected an obvious

United States District Court
For the Northern District of California

"manipulation of the legal system" that justified the trial court's impatience and refusal to appoint advisory counsel once Pope had achieved self-representation.  Cal. Ct. App. Opinion, p. 6.[10]

Pope has thus failed to show that counsel's representation was deficient under the deferential <u>Strickland</u> standard.  His derivative claims – that counsel's ineffectiveness led to a denial of his speedy-trial right and forced him into a tainted waiver of the right to counsel – also fail because he did not show he received ineffective assistance.

E.    <u>Jury Instruction Claims</u>

Pope claims that the trial court's refusal to give his requested jury instructions violated his right to due process.  Pet. at 7(12).  The requested instructions included an instruction on estoppel based on the alleged 1995 non-prosecution agreement, an instruction on the lack of "ordinarily expected" circumstantial evidence, an instruction on prosecutorial misconduct arising from the willful destruction of evidence, and a curative instruction based on the district attorney's appeal to the passion and prejudice of jurors during her closing statement.  <u>Id.</u> at 7(12)-(13).  Pope also claims that the court's failure to instruct on lesser-included and lesser-related offenses <u>sua sponte</u> violated due process.  <u>Id.</u> at 7(13).

1.    <u>Requested Instructions</u>

The California Court of Appeal rejected Pope's challenge to the jury instructions:

The first of these proposed instructions drafted by appellant reads as follows: "The prosecution has failed to produce the original notes of Officer Samples & Curran concerning the subject matter of [his] [her] testimony. You may consider this failure to produce the original notes in determining the weight to be given Officer Samples & Curran's testimony." The trial court rejected this instruction, because there was "no showing [the] officer[] [was] required to keep field notes on [the]

---

[10]The California Court of Appeal did not address the ineffective assistance of counsel claim directly, but briefly mentioned the <u>Marsden</u> hearings in its discussion of Pope's claim that he was entitled to advisory counsel.  <u>See</u> Cal. Ct. App. Opinion, pp. 4-6.

United States District Court
For the Northern District of California

facts of [this] case."

Another instruction provided as follows: "WILLFUL DESTRUCTION OF EVIDENCE ¶ . . . ¶ You have heard testimony that certain items that would normally be available during this trial are not available for your inspection. These are ¶ [the victim's] original 1994 calendar, the complete spiral notebook from which pages in evidence have been removed, the original evidence package from 1995, the tape recording started by Deputy Samples while interviewing [the victim] in 1995, Deputy Samples notes. ¶ The question of what happened to these items is entirely a question for you to decide. If you conclude that any one of these items is unavailable due to the failure of law enforcement to recognize the potential significance of this evidence, and the unavailability or destruction was done without the intent to falsely convict the defendant, you must regard the unavailability of that item as another fact that you are to consider together with all the other evidence you have heard and seen during this trial. ¶ If, however, you conclude that any law enforcement officer either destroyed or failed to preserve any one of these items in a deliberate design to falsely convict the defendant, *you have a duty to acquit him of all the crimes charged against him*." (Italics added) Appellant also offered a related instruction, "SUPPRESSION OF EVIDENCE ¶ . . . ¶ If you find that any law enforcement officer intentionally and willfully suppressed or attempted to suppress material evidence in any manner (such as intimidating witnesses or destroying evidence), you must presume that the suppressed evidence would have demonstrated the innocence of the defendant and that the officer's testimony concerning that evidence may be biased." The court rejected both of these related instructions because they were "not supported by the reasonable scope of [the] evidence."

Lastly, appellant sought another related instruction: "The absence of evidence you would normally expect to find in a prosecution based on circumstantial evidence may be considered by you along with all other proved facts in deciding the question of guilt or innocence. The weight to be given this absence of evidence is a matter for you to determine." The court rejected this instruction because it was "not supported by substantial evidence."

We agree with the trial court there was no showing the investigative field notes of Deputy Samples (or Deputy Curran) must have been preserved and made available at trial. Nor do we find substantial evidence suggesting the prosecution or law enforcement authorities destroyed or suppressed any relevant evidence whatsoever. All of appellant's proposed instructions were therefore properly rejected. (See People v. Marshall (1997) 15 Cal.4th 1, 40, 931 P.2d 262.)

Although appellant claims certain work ledger diary entries may have been added at a later time, this would not pertain to the willful destruction or suppression of evidence by the authorities, but at most would tend to show that the victim made additions to her own work ledger diary entries. Furthermore, the loss of investigative field notes prepared by Deputy Samples, the beginning of a tape recording, or a spiral notebook, at most demonstrates negligence on the part of law enforcement, but not the willful destruction of evidence.

Appellant's proposed instructions were otherwise argumentative, and contained misstatements of law. (See People v. Wright (1988) 45 Cal.3d 1126, 1135-1137, 248 Cal. Rptr. 600, 755 P.2d 1049 (Wright).) For example, one proposed instruction even told jurors it was their "duty to acquit" appellant if any documents had been deliberately destroyed or not preserved, regardless of their significance or lack thereof. Such an instruction does not accurately reflect the law. (See, e.g.,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

People v. Simms (1970) 10 Cal. App. 3d 299, 312-313, 89 Cal. Rptr. 1 [Neither the People nor the defendant would be required to introduce all possible evidence, no matter how tangential.].) In any event, the jury was properly instructed on the subjects of the production of evidence and the evaluation of circumstantial evidence, using the standard instructions, CALJIC Nos. 2.00, 2.01, 2.02, and 2.11. There was no need to further instruct on these points.

Lastly, we note the documents appellant sought to refer to in these proposed instructions were not shown to have any evidentiary value. The heart of this trial involved the testimony of appellant's daughter, supplemented by appellant's own incriminating statements and testimony. The victim's testimony was somewhat buttressed by her work ledger diary entries, which had obvious potential relevance. However, as to those matters appellant sought to refer to by his proposed instructions, he has simply failed to establish what, if any, value they might have been to his cause. The rejection of these special instructions could not have been prejudicial. (See Wright, supra, 45 Cal.3d at p. 1144; People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243.)

Cal. Ct. App. Opinion, pp. 8-10.

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. See id. Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury. See Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995). Due process does not require that an instruction be given unless the evidence supports it. See Hopper v. Evans, 456 U.S. 605, 611 (1982); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).

Failure to instruct on the theory of defense violates due process if "'the theory is legally sound and evidence in the case makes it applicable.'" Clark v. Brown, 450 F.3d 898, 904-05 (9th Cir. 2006) (quoting Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004)). However, the defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory, United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996); United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979), nor to an instruction embodying the defense theory if the evidence does not support it, Menendez, 422 F.3d at 1029. The omission of an instruction is less likely to be prejudicial than a misstatement of the law. See Walker v. Endell, 850 F.2d 470, 475 (9th Cir. 1987) (citing

1    Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

2          Pope's contention that the jury should have been instructed about estoppel is meritless.

3    The trial judge did not err in failing to give the estoppel instruction because, as discussed supra

4    pp. 12-13, there was no evidence to show the existence of a 1995 non-prosecution agreement.

5    See Menendez, 422 F.3d at 1029.

6          With respect to the instruction on the lack of circumstantial evidence, the jury was

7    instructed on the evaluation of circumstantial evidence by other pattern instructions given, i.e.,

8    CALJIC 2.00, 2.01, 2.02 and especially 2.11.  Also, as the state appellate court explained, the

9    heart of this case was the victim's testimony supplemented by Pope's own incriminating

10   statements, not the circumstantial evidence. Cal. Ct. App. Opinion, p. 10.  In light of the overall

11   evidence and the instructions provided, see Duckett, 67 F.3d at 745, it was reasonable for the

12   Court of Appeal to conclude that the refusal of the requested jury instructions was not erroneous.

13         Regarding the prosecutorial misconduct instructions, Pope contends that the prosecution

14   refused to show him the original evidence packaging for the exhibits from 1995. Pet. at 7(14).

15   This was relevant, he claims, because he was not able to view the list of people who had

16   examined the evidence and what purpose they had in looking at it.  Id.  The Court of Appeal

17   agreed with the trial court that the instructions were not appropriate because there was

18   insufficient evidence suggesting the prosecution or law enforcement authorities destroyed or

19   suppressed any material evidence.  The Court of Appeal further reasoned that the alleged

20   alterations to the victim's work ledger entries would show, "at most," that the victim made

21   additions to her own work ledger diary entries. Cal. Ct. App. Opinion, p. 9.  Similarly, the loss

22   of investigative field notes may have demonstrated negligence on the part of law enforcement,

23   but not the willful destruction of evidence.  Id.  Moreover, the Court of Appeal determined that

24   Pope's proposed instruction on the willful destruction of evidence contained misstatements of

25   state law regarding the prosecution's evidentiary burden of production.  Id. at 9-10.  Without a

26   showing that the evidence or the law supported his requested instructions, Pope has failed to

27   show a due process violation warranting habeas relief.  The Court of Appeal's rejection of the

28

United States District Court
For the Northern District of California

claim was neither contrary to nor an unreasonable application of clearly established federal law.

Pope also argues that the judge should have given a curative instruction to disregard the prosecutor's appeal to the "passions or prejudice of the jury" during her closing statement. Pet. at 7(15). Specifically, he contends that the prosecutor's comment that the victim was "heroic" in coming forward to protect her baby sister violated the judge's admonitions not to address the subject. See RT 1946. Pope characterizes the comment as prosecutorial misconduct. Pet. at 7(15). The prosecutor's statement was a fair appraisal of the evidence, especially in light of Pope's efforts to attribute to Jennifer a different motive (i.e., jealousy of the little sister) for her report of Pope's misconduct. A prosecutor's arguing facts supported by the record, and relevant to the charges, does not constitute a prohibited appeal to the jury's emotions, passions, or sympathy for the victim. Tan v. Runnels, 413 F.3d 1101, 1113, 1115 (9th Cir. 2005). The prosecutor addressed Jennifer's motive to rebut the theory of the defense that Jennifer fabricated her story to law enforcement out of personal hatred for her baby sister and to prevent Pope from having access to the baby. See RT 1943-1946; 1984-1987; 1990-1999.

Even if the refusal to give any of the requested instructions was error, it was harmless. The case against Pope was very strong. Jennifer's testimony was supported by calendar entries, a social worker's report from 1995, and testimony from other witnesses. Also, Pope had made a number of incriminating statements that corroborated Jennifer's testimony. The refusal to provide the particular instructions Pope requested did not have a substantial or injurious effect on the verdict. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

2.      Failure To Instruct On Lesser-Included And Lesser-Related Offenses

Pope contends that the trial court violated his right to due process by not sua sponte instructing on lesser-included and lesser-related offenses. At a jury instruction conference, the trial judge observed that he did not believe that there were any lesser-included offenses to be instructed upon, and Pope did not disagree. See RT 1605-1606. In his federal habeas petition,

margin**United States District Court**
For the Northern District of California

Pope argues that the court should have instructed on incest and unlawful intercourse with a minor.  Neither of those offenses was a lesser-included offense to the forcible rape and oral copulation charges against him.  And neither embodied his theory of defense, that is, he did not argue that he had consensual sex with the victim.

In Beck v. Alabama, 447 U.S. 625, 637-38 (1980), the Supreme Court held that the failure to instruct on a lesser-included offense in a capital case is constitutional error if there was evidence to support the instruction.  However, the Court expressly declined to address whether a lesser-included offense instruction is required in noncapital cases.  Id. at 632 n.8.  The Circuits are split on that question.  See Solis v. Garcia, 219 F.3d 922, 928-29 (9th Cir. 2000) (per curiam) (citing cases).[11]  Because there is no clearly established federal law with respect to a trial court's duty to instruct on lesser-included offenses in a noncapital case, habeas relief may not be granted for this claim.  See 28 U.S.C. § 2254(a), (d).

The Supreme Court has held that instructions on offenses that are not lesser-included offenses of the charged crime are not constitutionally mandated in capital or noncapital cases. Hopkins v. Reeves, 524 U.S. 88, 96-97 (1998).  Pope's claim that the trial court failed to instruct on lesser-related instructions therefore fails.

F.    Ineffective Assistance of Appellate Counsel Claim

Pope claims that his appellate counsel Chris Redburn was ineffective because he failed to present a complete record to the California Court of Appeal from which Pope's claims could be resolved on the merits, he failed to set forth all arguable issues to preserve them for future review, he failed to effectively argue the three points raised on direct appeal, and he did not

---

[11]The Ninth Circuit had the opportunity to extend Beck to noncapital cases in Bashor v. Risley, 730 F.2d 1228 (9th Cir. 1984), but it declined to do so.  The Bashor court did note that the failure to instruct on lesser-included offenses consistent with the defendant's theory of the case may constitute a cognizable habeas claim. 730 F.2d at 1240.  Under that rule, Pope's claim still fails because he never presented the possibility of a lesser-included offense as part of his defense.

23

United States District Court
For the Northern District of California

1    argue errors in sentencing.  Pope contends that he notified Redburn by letter that the issues he

2    wanted to raise on appeal were contained in multiple writs Pope had filed in the appellate court

3    but were not designated as part of the record on appeal.  Redburn's failure to obtain copies of

4    those writs and include the issues in the direct appeal forced Pope to file the supplemental habeas

5    petition, which the Court of Appeal refused to consolidate with the direct appeal.

6         The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant

7    the effective assistance of counsel on his first appeal as of right.  See Evitts v. Lucey, 469 U.S.

8    387, 391-394 (1985).  Claims of ineffective assistance of appellate counsel are reviewed

9    according to the standard set out in Strickland v. Washington, 466 U.S. 668 (1984).  Cockett v.

10   Ray, 333 F.3d 938, 944 (9th Cir. 2003) (citing Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.

11   1989)).  A defendant therefore must show that counsel's advice fell below an objective standard

12   of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional

13   errors, he would have prevailed on appeal.  Miller, 882 F.2d at 1434 (citing Strickland, 466 U.S.

14   at 688, 694; United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986)).  Appellate counsel does

15   not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  See

16   Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Miller, 882 F.2d at 1434 n.10.  The weeding out

17   of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.

18   See Miller, 882 F.2d at 1434.  Appellate counsel therefore will frequently remain above an

19   objective standard of competence and have caused his client no prejudice for the same reason

20   – because he declined to raise a weak issue.  Id.

21         Under the deferential Strickland standard, Pope has failed to show that his appellate

22   counsel was ineffective.  The issues Pope included in his supplemental habeas petition that he

23   wanted Redburn to address in the direct appeal are identical to those raised in this habeas action:

24   (1) denial of Pope's right to self-representation, (2) the alleged non-prosecution agreement

25   should have been a bar to the criminal action, (3) denial of speedy-trial rights due to the

26   ineffectiveness of counsel and the trial court's initiation of the competency proceedings before

27   granting self-representation, (4) ineffective assistance of counsel during preliminary stages of

28

prosecution, and (5) ineffective assistance of appellate counsel.  <u>See</u> Resp. Ex. F.  This court has rejected each of these issues after a thorough review of the record, and there has been no showing that, but for Redburn's unprofessional errors, there was any reasonable probability that Pope would have prevailed on appeal.  <u>See</u> <u>Miller</u>, 882 F.2d at 1434 & n.9.  Additionally, given the 101-page length of Pope's habeas petition to the California Supreme Court – in which he consolidated all the issues that he wanted Redburn to argue on direct appeal – the same opening brief to the Court of Appeal would likely have exceeded the page limit under California Rule of Court 8.360.  Redburn's decision to "weed out" some issues thus appears reasonable from both a tactical and technical perspective.  <u>See</u> <u>Miller</u>, 882 F.2d at 1434.  Habeas relief is denied on this claim.

G.    <u>"Apprendi" Claim</u>

Pope argues that the trial court violated the mandatory sentencing provisions and illegally imposed a sentence beyond the statutory maximum using facts not submitted to the jury and found true beyond a reasonable doubt.  Pet. at 7(17)-7(18).  He claims that this was constitutional error under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury.  U.S. Const. amend. VI.  The Supreme Court's Sixth Amendment jurisprudence was significantly expanded by <u>Apprendi</u> and its progeny, which extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing determinations as well as the actual elements of the crime.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  <u>Apprendi</u>, 530 U.S. at 490.  The "statutory maximum" for <u>Apprendi</u> purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   additional facts, but rather is the maximum he or she could impose without any additional

2   findings. Blakely, 542 U.S. at 303-04. In Cunningham v. California, 127 S. Ct. 856 (2007), the

3   Court held that California's determinate sentencing law ("DSL") violated the Sixth Amendment

4   because it allowed the sentencing court to impose an elevated sentence based on aggravating

5   facts that it found to exist by a preponderance of the evidence. Id. at 860, 870-71. Cunningham

6   essentially applied Blakely to California's sentencing scheme.

7           Neither Blakely nor Cunningham was decided before Pope's conviction became final.

8   The Supreme Court has not made Blakely retroactive to cases on collateral review of convictions

9   that became final before Blakely was decided. Schardt v. Payne, 414 F.3d 1025, 1036 (9th Cir.

10  2005).   In Schardt, the petitioner's conviction became final on December 22, 2000, after

11  Apprendi was decided on June 26, 2000, but before Blakely was announced on June 24, 2004.

12  Id. at 1034.   The Ninth Circuit found that although petitioner's sentence violated the Sixth

13  Amendment's right to a jury under Blakely, habeas relief was not available because the Blakely

14  decision announced a "new rule" that does not apply retroactively to cases on collateral review.

15  Id. (citing Teague v. Lane, 489 U.S. 288, 301 (1989)). Similarly, Pope's conviction became final

16  in January 2004, months before Blakely was decided.  Thus, as in Schardt, Pope is not entitled

17  to relief on this claim because the rule in Blakely does not apply retroactively to this case.

18  Cunningham, which was essentially a California-specific application of Blakely, also has not

19  been made retroactive to cases on collateral review before Blakely was decided. Cf. Butler v.

20  Curry, 528 F.3d 624, 633-35, 639 (9th Cir. 2008) (application of Cunningham to petitioner

21  whose conviction became final after Blakely was not barred by Teague).  Pope's claim for relief

22  under Blakely is denied.

23  /   /   /

24  /   /   /

25

26

27

28

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED.  The clerk shall close the file.

IT IS SO ORDERED.

DATED: July 17, 2008

SUSAN ILLSTON
United States District Judge